# STATE OF CONNECTICUT *v.* GARY D. GIBSON
## (SC 18402)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

Argued September 20—officially released November 22, 2011

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Christian Watson*, assistant state's attorney, for the appellant (state).

*David B. Rozwaski*, special public defender, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The defendant, Gary D. Gibson, was convicted, after a jury trial, of failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1),[1] and was acquitted of a charge of stalking in the first degree in violation of General Statutes § 53a-181c.[2] The defendant appealed from the judgment of

---

[1] General Statutes § 53a-172 (a) provides in relevant part: "A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, such person wilfully fails to appear when legally called according to the terms of such person's bail bond or promise to appear . . . ."

[2] The conduct that formed the basis for the stalking charge in the present case also resulted in the defendant's conviction in a separate case for violating probation in violation of General Statutes § 53a-32. The Appellate Court affirmed that judgment of conviction. *State* v. *Gibson*, 114 Conn. App. 295, 318–19, 969 A.2d 784 (2009). Because the defendant does not challenge that ruling in this appeal, we do not include in our recitation of facts and procedural history any facts or proceedings related solely to that conviction.

conviction to the Appellate Court, which reversed the conviction on the ground that improper statements by the prosecutor during closing argument had deprived the defendant of his constitutional due process right to a fair trial. *State* v. *Gibson*, 114 Conn. App. 295, 313, 969 A.2d 784 (2009). Thereafter, this court granted the state's petition for certification to appeal, limited to the following issues: "Did the Appellate Court properly determine that the trial prosecutor's two uses of the words 'I think' while marshaling the evidence during closing argument amounted to prosecutorial impropriety? If so, did the Appellate Court properly conclude that the alleged impropriety deprived the defendant of the due process right to a fair trial?" *State* v. *Gibson*, 292 Conn. 916, 973 A.2d 1276 (2009). We conclude that the prosecutor's remarks were not improper and, accordingly, we reverse in part the judgment of the Appellate Court.

The jury reasonably could have found the following facts. On October 23, 2005, the victim, David Farineau, arrived at a Stop and Shop grocery store in Bristol and noticed a blue Jeep Liberty in a parking space on Pine Street. When the victim left the Stop and Shop a few minutes later, he noticed that the Jeep was behind him. The Jeep followed the victim to a gasoline station and continued to follow him as he drove home. The victim recognized the driver of the Jeep as the defendant because the defendant previously had been convicted of stalking the victim in violation of General Statutes § 53a-181d.

Thereafter, the defendant was charged with stalking in the first degree. In connection with that charge, the defendant appeared at a pretrial proceeding before the court, *Dunnell, J.*, on April 4, 2006, at which the prosecutor, defense counsel and the court engaged in the following colloquy:

"[Defense Counsel]: Good morning, Your Honor. Frank Canace for [the defendant]. I spoke with the state yesterday. I think we're looking for a date for victim's contact?

"[The Prosecutor]: Yes.

"[Defense Counsel]: May I have May 5, [2006] if that's convenient with the court?

"The Court: May 5?

"[Defense Counsel]: Yes, ma'am.

"The Court: Yes."

When the defendant failed to appear in court on May 5, 2006, the trial court, upon the state's request, ordered that the defendant be rearrested and charged with failure to appear in the first degree. After being notified that there was a warrant out for his rearrest, the defendant turned himself in to the police on May 11, 2006.

At trial, the state introduced the transcript of the April 4, 2006 proceeding into evidence. It also presented as a witness, Laura Leigh, the head clerk of the Superior Court for the judicial district of New Britain, geographical area number seventeen at Bristol, who testified that, on May 5, 2006, the trial court had ordered that the defendant be rearrested and that the reason for the rearrest was that the defendant had failed to appear in court. The defendant testified that he had not appeared at the May 5, 2006 hearing because, three weeks after the April 4, 2006 court date, he had decided that he should enter the court date into his cell phone calendar and, at the time, he mistakenly believed that the hearing had been scheduled for May 16, 2006. He further testified that he had not failed to appear intentionally and that he had turned himself in to the police immediately upon learning that the trial court had ordered his rearrest.

During closing argument to the jury on the failure to appear charge, the prosecutor stated: "In terms of proving the case for failure to appear, let's logically go through this. You just recently heard testimony from [the defendant]. The state alleges the following through its witnesses: [The defendant] was standing up in front of the court, in front of a judge, standing facing the judge on April 4 of 2006, and during a colloquy where [the defendant] was standing directly to the right of his attorney, the judge indicated May 5. And [defense counsel] asked for May 5. [The defendant] admitted to knowing [and] standing in front of the judge and saying, yeah, I knew my court date was May 5. I heard it twice. He knew his court date was May 5, yet on May 5, where was [the defendant]? He wasn't in court. You heard the testimony from the [court] clerk. [The defendant] was ordered rearrested. His bond was forfeited, and he was ordered rearrested. Why does a rearrest happen, Madam Clerk—when the defendant isn't in court? Did the defendant wilfully [fail] to appear in court on May 5, 2006? I think he did. Is it safe to assume [that the defendant], sometime after May 5, when he realized that he got rearrested, conveniently came up with the new court date of May 16? I think it's pretty safe to assume that, ladies and gentlemen. He never called the clerk's office, never called his attorney, never called anybody to see if his court date was changed. But he got that court date on April [4], and they told him it was May 5, twice." Defense counsel did not object to these remarks.

The trial court, *Schuman, J.*, instructed the jury that "[c]ertain things are not evidence, and you may not consider them in deciding what the facts are. These include . . . arguments and statements by lawyers. The lawyers are not witnesses. What they have said in their closing arguments is intended to help you interpret the evidence, but it is not evidence."

The jury returned a verdict of not guilty on the stalking charge, but found the defendant guilty on the failure to appear charge. The trial court rendered judgment in accordance with the verdict and the defendant appealed from the judgment of conviction to the Appellate Court, claiming that the prosecutor's use of the phrase "I think" twice during closing argument constituted an improper expression of personal opinion, improperly suggested that the prosecutor had personal knowledge of the case that was unavailable to the jury, and deprived the defendant of his due process right to a fair trial. *State* v. *Gibson*, supra, 114 Conn. App. 306–307. A majority of the Appellate Court agreed with the defendant and reversed the judgment of conviction on the failure to appear charge.[3] Id., 319.

This certified appeal followed. The state contends that the majority of the Appellate Court improperly determined that the prosecutor's remarks were improper because the prosecutor was merely exhorting the jury to draw reasonable inferences from the evidence. It further claims that, even if the remarks were improper, they did not rise to the level of a due process violation. The defendant contends that, to the contrary, the majority of the Appellate Court properly concluded that these remarks constituted an improper expression of the prosecutor's personal opinion regarding the defendant's guilt and his credibility, and that they were so egregious that "[i]t cannot be known whether the jury would have concluded that the defendant's conduct was wilful without the prosecutor's giving such a conclusion his personal stamp of approval . . . ." Id., 313.

"We previously have recognized that a claim of prosecutorial impropriety, even in the absence of an objec-

---

[3] Judge Bishop authored a dissenting opinion in which he concluded that the prosecutor's remarks were not improper; *State* v. *Gibson*, supra, 114 Conn. App. 325; and that, even if they were improper, they did not deprive the defendant of his due process right to a fair trial. Id., 331.

tion, has constitutional implications and requires a due process analysis under *State* v. *Williams*, [204 Conn. 523, 535–40, 529 A.2d 653 (1987)]. See *State* v. *Stevenson*, 269 Conn. 563, 573–75, 849 A.2d 626 (2004)." *State* v. *Grant*, 286 Conn. 499, 545 n.22, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008). "In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 551, 949 A.2d 1092 (2008).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) *State* v. *Camacho*, 282 Conn. 328, 367–68, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007).

It is well established that "[a] prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions. . . . It is not, however, improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . .

"Although prosecutors generally should try to avoid using phrases that begin with the pronoun I, such as I think or I believe, we recognize that the use of the word I is part of our everyday parlance and . . . because of established speech patterns, it cannot always easily be eliminated completely from extemporaneous elocution. . . . Furthermore, [t]he state's attorney should not be put in the rhetorical straightjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows . . . . Therefore, if it is clear that the prosecutor is arguing from the evidence presented at trial, instead of giving improper unsworn testimony with the suggestion of secret knowledge, his or her occasional use of the first person does not constitute [prosecutorial impropriety]." (Citations omitted; internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 435–36, 902 A.2d 636 (2006); see also *State* v. *Bermudez*, 274 Conn. 581, 591, 876 A.2d 1162 (2005) ("[w]e . . . never have categorically barred counsel's use of such rhetorical devices . . . as long as there is no rea-

sonable likelihood that the particular device employed will confuse the jury or otherwise prejudice the opposing party" [internal quotation marks omitted]); *State* v. *Colon*, 272 Conn. 106, 250, 864 A.2d 666 (2004) (use of phrases such as " 'I would think' " does not always signify improper expression of personal opinion), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *State* v. *Santiago*, 269 Conn. 726, 751, 850 A.2d 199 (2004) ("[w]e must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand" [internal quotation marks omitted]).

With these principles in mind, we turn to the state's claim in the present case that the Appellate Court majority improperly concluded that the prosecutor's use of the phrase "I think" during closing argument to the jury was improper. We agree. The prosecutor began his remarks on the failure to appear charge by stating "let's logically go through this," suggesting that he would review the evidence with the jury. He then recited the specific evidence that would support a finding that the defendant had been informed that his court date was May 5, 2006, and that he had wilfully failed to appear on that date. It is apparent, therefore, that, when the prosecutor immediately followed this recitation of the evidence with the rhetorical question, "Did the defendant wilfully [fail] to appear in court on May 5, 2006?" and then responded, "I think he did," he was attempting to persuade the jury to draw this inference from the circumstantial evidence of intent that he had just recited, and was not giving improper unsworn testimony or attempting to insinuate that he had secret knowledge of the defendant's guilt. See *State* v. *Ancona*, 270 Conn. 568, 608, 854 A.2d 718 (2004) (prosecutor's statement that he did not believe witnesses was not

improper expression of personal opinion when prosecutor "recited the specific evidentiary predicate for the inference that he was urging the jury to make"), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005); *State* v. *Thompson*, 266 Conn. 440, 466, 832 A.2d 626 (2003) (when prosecutor's statements that witness and defendant had lied followed detailed summaries of evidence supporting that inference, remarks were not improper expression of personal opinion). We reach the same conclusion with respect to the prosecutor's rhetorical question, "Is it safe to assume [that the defendant], sometime after May 5, when he realized that he got rearrested, conveniently came up with the new court date of May 16?" and his response, "I think it's pretty safe to assume that, ladies and gentlemen." Although we agree with the Appellate Court that the circumstantial evidence of wilfulness "was certainly not overwhelming"; *State* v. *Gibson*, supra, 114 Conn. App. 308; the prosecutor was entitled to argue that the evidence was *sufficient* to prove wilfulness, and we repeatedly have recognized that such an argument is not improper merely because the prosecutor used the phrase "I think."[4] *State* v. *Luster*, supra, 279 Conn.

---

[4] The Appellate Court also stated that, "[w]hen the evidence could lead a jury to infer the factual conclusion about which the prosecutor expresses his personal opinion, we conclude that the challenged remarks fall close enough to the line to . . . warrant our further review." (Internal quotation marks omitted.) *State* v. *Gibson*, supra, 114 Conn. App. 309. We find this formulation to be somewhat confusing. To the extent that the Appellate Court was suggesting that, when the prosecutor clearly was expressing his personal opinion, the remarks are improper even if they were supported by the evidence, we agree. For example, if a prosecutor stated, "I have my reasons to believe that the defendant is guilty," the remark would be improper even if the evidence would support a finding of guilt. To the extent that the Appellate Court was suggesting that it will presume that the use of the phrase "I think" constitutes the improper expression of personal opinion, however, even if the prosecutor clearly was arguing that the jury reasonably could infer a particular fact from the evidence presented at trial, any such presumption would be inconsistent with our well established precedent. See, e.g., *State* v. *Luster*, supra, 279 Conn. 436 ("if it is clear that the prosecutor is arguing from the evidence presented at trial, instead of

435–36; *State* v. *Bermudez*, supra, 274 Conn. 591; *State* v. *Colon*, supra, 272 Conn. 106; *State* v. *Santiago*, supra, 269 Conn. 751. We conclude, therefore, that the prosecutor's remarks did not constitute an improper expression of personal opinion. We also emphasize, however, that it would have been preferable for the prosecutor to avoid using the phrase "I think" when arguing that the evidence supported a finding of wilfulness.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgment of conviction on the charge of failure to appear in the first degree; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

giving improper unsworn testimony with the suggestion of secret knowledge, his or her occasional use of the first person does not constitute [prosecutorial impropriety]"). Finally, to the extent that the Appellate Court was suggesting that it could determine that the defendant was deprived of his due process right to a fair trial without first determining whether the prosecutor's conduct was improper, this suggestion would be inconsistent with our case law holding that a reviewing court must determine that the prosecutor's conduct was improper before it may conclude that the defendant was deprived of a fair trial. *State* v. *Stevenson*, supra, 269 Conn. 572 ("[t]he two steps [for evaluating claims of prosecutorial impropriety] are separate and distinct: [1] whether misconduct occurred in the first instance; and [2] whether that misconduct deprived a defendant of his due process right to a fair trial" [internal quotation marks omitted]). Although this court occasionally has skipped the first step of this analysis when the question of impropriety was a close one and it was clear that there was no due process violation; see, e.g., *State* v. *Grant*, 286 Conn. 499, 542, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008); and although there may be some overlap between the factors that the reviewing court considers when determining whether the prosecutor's conduct was improper and those that it considers when conducting its constitutional analysis; see, e.g., *State* v. *Quint*, 97 Conn. App. 72, 88–89, 904 A.2d 216 (prosecutor's questions to defendant regarding credibility of witnesses were not improper when invited by defense counsel), cert. denied, 280 Conn. 924, 908 A.2d 1089 (2006); a reviewing court should not conclude that the prosecutor's conduct deprived the defendant of his due process right to a fair trial without first clearly determining that the prosecutor's conduct was improper.