******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* CHARLES NICHOLAS PETERSEN
## (AC 41907)

Lavine, Prescott and Moll, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of failure to appear in the first degree, the defendant appealed to this court. The defendant had been arrested and charged with a felony offense; a trial was scheduled to commence at 10 a.m. on October 3, 2017. The defendant was not present in court on the scheduled date and time and the court ordered the defendant's bond forfeited and that he be rearrested. The defendant entered the courthouse at 10:34 a.m., then briefly went outside to telephone his attorney, W. The defendant and W reentered the courthouse and the court ordered that jury selection proceed; the defendant, however, left the courthouse and, subsequently, he was charged with failure to appear. On appeal, the defendant claimed, inter alia, that the evidence was insufficient to sustain his conviction. *Held*:

1. The evidence was sufficient to support the defendant's conviction of failure to appear in the first degree: the evidence admitted at trial and the reasonable inferences from that evidence that the jury was permitted to draw were sufficient to establish that the defendant wilfully failed to appear, as the defendant knew that he must appear in court to commence jury selection, he admitted that he could have walked to the courthouse from his home and arrived on time but chose not to do so, and the jury reasonably could have inferred from that decision that he did not intend to appear; moreover, the defendant's conduct after arriving at the courthouse provided a basis for the jury reasonably to have inferred that he wilfully failed to appear in court at the place and time to which the charges against him were continued, the court provided an opportunity for the defendant to remedy his failure to appear by stating that, even though it ordered a rearrest, it was willing to commence with jury selection that day and reopened a courtroom to do so, and, despite knowing of this opportunity, the defendant fled the courthouse; furthermore, the defendant did not remedy his failure to appear in the following days and failed to surrender to authorities for more than one month, from which the jury reasonably could have inferred that his failure to appear was not accidental but, instead, demonstrated an intent to avoid any incarceration that might result from his criminal trial and, thus, his conduct after arriving at the courthouse and in the weeks that followed October 3, 2017, arguably demonstrated a consciousness of guilt regarding his intention to appear in court at 10 a.m.

2. The defendant could not prevail on his claim that the trial court abused its discretion by admitting evidence of the events that occurred after he arrived at the courthouse, which was based on his claim that the evidence was irrelevant because once the court forfeited his bond and ordered him rearrested, he was no longer obligated to appear; the defendant's conduct after entering the courthouse was probative of his state of mind as to whether he intended to appear in a courtroom at all that day, and the jury reasonably could have inferred that the defendant's failure to appear at the continued proceeding was part of his scheme to avoid the commencement of his trial.

3. The defendant's claim that the trial court improperly admitted W's testimony because it did not place the burden on the state to demonstrate a compelling need for the testimony, and that the state did not show a compelling need, was unavailing: the court understood that it must apply the compelling need test and was satisfied that the state met that burden, and, even if the court's decision was ambiguous, this court presumes the court applied the correct legal standard; moreover, W was uniquely positioned to testify about what he told the defendant and his impression of the defendant's understanding of the situation, and W's testimony was, thus, relevant to the defendant's state of mind.

4. The trial court properly instructed the jury on the third element of failure to appear in the first degree: despite the defendant's claim that the court

instructed the jury in a manner that permitted the jury to convict him on the basis of conduct that occurred after he was no longer required to appear, the court's instructions were consistent with the applicable statute (§ 53a-172 (a)) and case law, the instructions directly quoted the statutory language the defendant contended was necessary, and, thus, the jury understood that it could convict the defendant only if he wilfully failed to appear when legally called according to the terms of his bail bond; moreover, the court's use of the phrase "as required" in explicating the third element of the offense was a shorthand reference to § 53a-172 (a), and, read in context, tied the defendant's obligation to appear at the time and place he was legally called according to the terms of his bail bond; furthermore, when the court forfeited the defendant's bond, it stated that it was willing to proceed with jury selection if W could get the defendant to the courthouse, and the practical effect of that statement was to condition the forfeiture of the bond until later in the day to give the defendant an opportunity to cure his failure to appear and, accordingly, the defendant's bond continued to obligate him to appear in a courtroom after he arrived at the courthouse.

Argued October 18, 2019—officially released March 31, 2020

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crime of failure to appear in the first degree, and, in a second part, with having committed an offense while on release, brought to the Superior Court in the judicial district of New Britain, geographical area fifteen, where the first part of the information was tried to the jury before *Graham, J.*; verdict of guilty; thereafter, the defendant was presented to the court on a plea of guilty to having committed an offense while on release; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Andrew S. Marcucci*, assigned counsel, for the appellant (defendant).

*Nancy L. Walker*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Dave Clifton*, assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Charles Nicholas Petersen, appeals from the judgment of conviction, rendered after a jury trial, of failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1). The defendant claims that (1) there was insufficient evidence to prove beyond a reasonable doubt that he had wilfully failed to appear in court when the court forfeited his appearance bond, (2) the court improperly admitted evidence of the conduct in which he engaged after the court had forfeited his bond, (3) the court improperly permitted the state to call his former attorney as a witness because there was no compelling need for his testimony, and (4) the court improperly instructed the jury on the elements of failure to appear in the first degree. We affirm the judgment of the trial court.

The following procedural history and facts, as reasonably could have been found by the jury, are relevant to this appeal. The defendant was arrested on May 7, 2015, and charged with a felony offense.[1] He was released from custody that same day in accordance with the terms of a nonsurety appearance bond, pursuant to which he promised to appear in court on the date and time specified on the bond, and "at any other place and time to which the charge(s) against me may be continued . . . ." Consistent with the language of the bond, the defendant also acknowledged that "if I fail to appear, in accordance with the foregoing promises . . . I will be committing the crime of Failure to Appear" and be subject to arrest. Attorney William Watson filed an appearance on behalf of the defendant on March 29, 2017.

A jury trial with respect to the unclassified felony and the other charges was scheduled to commence at 10 a.m. on October 3, 2017, in the Superior Court in New Britain. The defendant knew that his presence in court was required at that time and place.

At 10 a.m. on October 3, 2017, the court, *Hon. Edward J. Mullarkey*, judge trial referee, the prosecutor, the clerk, and Watson were present in courtroom 4A, where jury selection was to be held. The defendant, however, was not. The court passed the matter to give Watson time to find the defendant. During that time, judicial marshals also searched the courthouse for the defendant. He still was not present at 10:25 a.m. Accordingly, the court ordered that the defendant's bond be forfeited and that he be rearrested. The court also ordered counsel and the clerk to remain available in case the defendant appeared later that day. Watson returned to his office across the street from the courthouse.

The defendant entered the courthouse at 10:34 a.m. After being unable to locate his attorney, the defendant briefly went outside the courthouse and contacted Wat-

son by telephone. Watson told the defendant that they needed to be in the courthouse because the judge had stated that he would "deal with the outstanding rearrest orders . . . and we would continue with jury selection" if the defendant appeared. Watson informed the defendant that they needed to address the defendant's outstanding failure to appear, and he also told the defendant what steps the court might take with respect to his failure to appear in court at 10 a.m. Watson testified that he intended to ask the court to vacate the rearrest order.

The defendant and Watson met and reentered the courthouse at approximately 10:45 a.m. They proceeded to courtroom 4A together, but it was locked. The clerk received word that Watson had found the defendant and that the defendant was in the courthouse. She conveyed this information to the court. Upon learning this, the court ordered that the defendant be taken into custody. The court also ordered that jury selection proceed in a courtroom on the third floor that had direct access to the courthouse lockup facilities, which would be necessary if the defendant were taken into custody. The court ordered the clerk to inform counsel of this change. Watson, in turn, informed the defendant that he was required to appear in the courtroom on the third floor.

Court was opened in a third floor courtroom to continue the proceedings. The prosecutor, the clerk, and Watson appeared in that courtroom, but the defendant did not. Surveillance footage later showed that the defendant had left the courthouse. The court indicated that its prior rearrest order would remain in effect. Per the court's instructions, counsel and the clerk remained on standby until approximately noon, in case the defendant appeared again. Although the defendant had entered the courthouse at 10:34 a.m. on October 3, 2017, at no time did he appear in a courtroom before a judge as required. Jury selection did not proceed, and an arrest warrant charging the defendant for failure to appear in the first degree in violation of § 53a-172 was later issued. The defendant waited approximately one month before he surrendered to law enforcement, during which time he claimed he needed to "put [his] affairs in order . . . ."

The defendant subsequently was arraigned on the charge of failure to appear in the first degree for "wilfully fail[ing] to appear in court when legally called according to the terms of his bail bond . . . ." The state also charged the defendant in a part B information with being a subsequent offender in possession of a controlled substance and with committing an offense while on release.

Following the grant of a motion to suppress filed by the defendant, the court dismissed all of the charges pending against the defendant except for the charge of

failure to appear in the first degree and the charge of committing an offense while on release. The defendant pleaded not guilty to the remaining charges and elected to be tried by a jury with respect to the charge of failure to appear in the first degree and by the court with respect to the charge in the part B information.

Trial commenced on March 8, 2018. After the state rested, the court, *Graham, J.*, denied the defendant's motion for a judgment of acquittal. The defendant testified that on October 3, 2017, he awoke at 7 a.m. and was ready for court at approximately 8 a.m. He admitted that he had to be in court for jury selection that day, so he planned to arrive at court at 9:30 a.m. The defendant testified that, the night before, he had arranged for his friend, Jason Nadeau, to drive him to court because the defendant did not own a vehicle and his license had been suspended. The defendant lived 1.6 miles from the courthouse, and he testified that the drive was approximately fifteen minutes long. He also testified that he briskly could have walked that distance in thirty minutes.

The defendant testified that he tried to confirm his ride with Nadeau at approximately 9:20 a.m. on October 3, 2017, but did not receive a response from him. He began looking for another ride to court. According to the defendant, he contacted his sister at approximately 9:25 or 9:30 a.m., then contacted his friend Shawn, and then Amanda Russo. The defendant called Todd Russo (Russo) at approximately 9:30 a.m.; Russo returned that call at approximately 9:45 a.m. Russo agreed to drive the defendant to court and arrived at the defendant's house at approximately 10 a.m.

The defendant testified that when he arrived at the courthouse and contacted Watson by telephone, Watson told him that "they revoked [his bond]. They issued a cash only bond and a warrant . . . ." He also testified that Watson did not tell him to go to a different courtroom. Instead, he claimed that Watson told him that there was nothing more he could do.

Russo also testified on behalf of the defendant. He had known the defendant for the defendant's entire life. At approximately 9:45 a.m. on the morning of October 3, 2017, he received a call from the defendant, who asked for a ride to court. Following that call, Russo got dressed and went to the defendant's house. It took approximately fifteen to twenty minutes to get there. After picking the defendant up, Russo drove straight to the courthouse. Russo testified that they arrived at the courthouse "later than [10 a.m.] but not by much" and that he watched the defendant enter the courthouse. During closing arguments to the jury, the state argued that, as demonstrated by the defendant's continuing course of conduct throughout the day of October 3, 2017, the defendant wilfully had failed to appear in court on that date for trial on his pending felony charge.

The state contended that the defendant's intent was to prevent the commencement of his trial, and that even though he had gone to the courthouse that morning, he never intended to appear in the courtroom for the commencement of trial. The state argued that the jury should consider his flight from the courthouse as consciousness of guilt evidence from which it could infer that his failure to appear in court for jury selection that day was wilful.

In response, the defendant argued to the jury, through counsel, that his conduct in failing to appear in the courtroom at 10 a.m. on October 3, 2017, was not wilful. The defendant asserted that if he truly had not intended to appear in court that day, he never would have bothered coming to the courthouse at all. With respect to his decision to leave the courthouse after he had met with Watson, the defendant argued that he knew that he likely was to be taken into custody and that he became "understandably upset and frustrated about the fact that no one seemed to care that he had done his best to get to court on time that day . . . ." Finally, the defendant argued to the jury that it should not consider his conduct in leaving the courthouse because, by that time, his bond already had been forfeited as a consequence of Judge Mullarkey's order and, thus, he no longer was under an obligation to appear in a courtroom. In sum, the defendant contended to the jury that he unsuccessfully had tried to get to court on time and that his decision to leave the courthouse was a "red herring" and should not be considered as evidence of wilfulness because he was no longer obligated to come to court and simply was frustrated that he likely was going to be taken into custody during his trial.

The jury found the defendant guilty of failure to appear in the first degree. The defendant then elected to plead guilty to the charge in the part B information, conditioned on his right to file this appeal. See Practice Book § 61-6. The court subsequently imposed on the defendant a total effective sentence of five years of incarceration, and this appeal followed.

I

The defendant first claims that there was insufficient evidence to support his conviction of failure to appear in the first degree because "[n]o reasonable fact finder could determine . . . that the defendant's failure to appear prior to 10:25 a.m. on October 3, 2017 was wilful." With respect to this claim, the defendant makes two related arguments. First, the defendant asserts that any evidence regarding the events that occurred after he arrived at the courthouse was legally irrelevant to the jury's assessment of whether he wilfully failed to appear prior to the forfeiture of his bond because, once his bond had been forfeited, he no longer was under a legal obligation to appear in a courtroom. Second, the defendant argues that, in the absence of the evidence

regarding his conduct after he arrived at the courthouse, the remaining evidence was insufficient to prove that he wilfully failed to appear in court at the time that his bond was forfeited. In this regard, the defendant asserts that the facts of his case are nearly identical to the facts in *State* v. *Khadijah*, 98 Conn. App. 409, 909 A.2d 65 (2006), appeal dismissed, 284 Conn. 429, 934 A.2d 241 (2007), in which this court concluded that the evidence was insufficient to prove that the defendant in that case wilfully failed to appear. We are not persuaded that the evidence in the present case was insufficient to prove beyond a reasonable doubt that the defendant's failure to appear for trial was wilful, and we find the defendant's reliance on *Khadijah* unconvincing.

We begin our analysis with the well established standard of review for assessing an insufficiency of the evidence claim. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Shin*, 193 Conn. App. 348, 357–58, 219 A.3d 432, cert. denied, 333 Conn. 943, 219 A.3d 374 (2019).

As a preliminary matter, we first address the defendant's assertion that, in assessing the sufficiency of the

evidence, this court should not consider as part of that calculus any evidence presented to the jury regarding his conduct after the court revoked his bond and ordered him rearrested. We reject this assertion because it is inconsistent with the well established rule that the sufficiency of the evidence must be assessed in light of all of the evidence submitted to the jury, including evidence that the defendant argues was improperly admitted.

As we recently stated, established case law commands us to "review claims of evidentiary insufficiency in light of *all of the evidence* [adduced at trial]. . . . *State* v. *Morelli*, 293 Conn. 147, 153, 976 A.2d 678 (2009). In other words, we review the sufficiency of the evidence as the case was tried . . . . Accordingly, we have traditionally tested claims of evidentiary insufficiency by reviewing no less than, and no more than, the evidence introduced at trial. . . . [Id.]; see also *State* v. *Adams*, 139 Conn. App. 540, 550, 56 A.3d 747 (2012) (appellate review of evidentiary insufficiency claim incorporates all evidence, even inadmissible evidence, adduced at trial), cert. denied, 308 Conn. 928, 64 A.3d 121 (2013)." (Citations omitted; internal quotation marks omitted.) *State* v. *Cancel*, 149 Conn. App. 86, 94, 87 A.3d 618, cert. denied, 311 Conn. 954, 97 A.3d 985 (2014).

In light of this rule, we next discuss the sufficiency of the evidence as a whole and the defendant's reliance on *State* v. *Khadijah*, supra, 98 Conn. App. 409. We begin with the elements of the offense for which the defendant was charged. Section 53a-172 (a) provides in relevant part: "A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, such person wilfully fails to appear when legally called according to the terms of such person's bail bond or promise to appear . . . ." The defendant's insufficiency of the evidence claim focuses only on the state's obligation to demonstrate that his failure to appear was wilful.

"To prove the wilful element of failure to appear the state must prove beyond a reasonable doubt . . . that the defendant received and deliberately ignored a notice to appear . . . . [T]he word wilful means doing a forbidden act *purposefully* in violation of the law. It means that the defendant acted *intentionally* in the sense that his conduct was *voluntary* and not inadvertent . . . . Thus, wilful misconduct is intentional misconduct, which is conduct done purposefully . . . ." (Citation omitted; emphasis altered; internal quotation marks omitted.) *State* v. *Bereis*, 114 Conn. App. 554, 561, 970 A.2d 768, cert. denied, 293 Conn. 902, 975 A.2d 1278 (2009).

"[T]he state of mind of one accused of a crime is often the most significant and, at the same time, the

most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually [proven] by circumstantial evidence . . . . For example, intent may be proven by conduct before, during and after [the commission of the crime]. Such conduct yields facts and inferences that demonstrate a pattern of behavior and attitude . . . that is probative of the defendant's mental state." (Citation omitted; internal quotation marks omitted.) *State* v. *Bonilla*, 317 Conn. 758, 766, 120 A.3d 481 (2015).

The evidence admitted at trial, and the reasonable inferences from that evidence that the jury was permitted to draw, were more than sufficient to establish that the defendant wilfully failed to appear in court for the commencement of his jury trial. The defendant knew that he must appear in court on October 3, 2017, at 10 a.m. to commence jury selection. The defendant lived only 1.6 miles from the courthouse and admitted in his testimony that he could have walked to the courthouse and arrived by 10 a.m. He deliberately chose not to do so, and the jury reasonably could have inferred from that choice that he did not really intend to appear in court.

Additionally, the defendant's conduct after arriving late to the courthouse also provides a basis for the jury reasonably to have inferred that he wilfully chose not to appear in court "at the place and time to which the charges against [him had been] continued . . . ." The court provided the defendant an opportunity to remedy his failure to appear in court at 10 a.m. by communicating to the defendant through his attorney that, even though he had ordered a rearrest of the defendant, it was still willing to commence with jury selection that day and, in fact, reopened a courtroom to do so. Despite knowing of an additional opportunity to appear for jury selection, and his attorney's direction to the defendant that he must appear in a courtroom on the third floor, the defendant instead chose to flee the courthouse. From this evidence, the jury reasonably could have inferred that, in spite of his protestations, the defendant had never intended to appear in a courtroom for jury selection at any point that day even though he had come to the courthouse that morning. See *State* v. *Turmon*, 34 Conn. App. 191, 196, 641 A.2d 138 (evidence sufficient to prove wilful failure to appear even though defendant came to courthouse on required date but left because of alleged intestinal illness without appearing in courtroom or notifying court personnel), cert. denied, 229 Conn. 922, 642 A.2d 1216 (1994).

Moreover, despite knowing that he had failed to appear in court for the commencement of jury selection, the defendant did nothing to remedy that failure in the following days, such as filing a motion to vacate the

rearrest order. He did not surrender to authorities for more than one month, a fact from which the jury reasonably could have inferred that his failure to appear at 10 a.m. on October 3, 2017, was not accidental but, instead, demonstrated an intent to avoid, at least temporarily, any incarceration that might result following the completion of his criminal trial. Thus, his conduct after arriving at the courthouse late and in the weeks that followed October 3, 2017, arguably demonstrated a consciousness of guilt regarding his intention to appear in court at 10 a.m. See *State* v. *Oliveras*, 210 Conn. 751, 759, 557 A.2d 534 (1989) ("[e]vidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, is ordinarily the basis for a charge on the inference of consciousness of guilt").[2]

In large measure, the defendant's insufficiency of the evidence claim is premised on the misguided assertion that the jury was obligated to credit his testimony that his conduct prior to 10:34 a.m. demonstrated that he had intended to appear in court as required. See, e.g., *State* v. *Gibson*, 114 Conn. App. 295, 303, 969 A.2d 784 (2009) (jury was free to not credit defendant's "testimony about why he missed his court date"), reversed in part on other grounds, 302 Conn. 653, 31 A.3d 346 (2011).[3] For example, the jury was not obligated to credit the defendant's testimony (1) regarding the alleged efforts that the defendant made to arrange transportation to the courthouse, (2) that he had called the clerk's office to inform the court that he would be late, and (3) that he left the courthouse because Watson had told him in the hallway "nothing could be done" to vacate the order of a rearrest.

In support of the defendant's contention that his failure to appear was not wilful, he relies primarily on *State* v. *Khadijah*, supra, 98 Conn. App. 409, in which this court concluded that the evidence was insufficient to prove that the defendant in that case wilfully failed to appear. Id., 418–19. *Khadijah*, however, is distinguishable from the present case.

In *Khadijah*, the defendant appeared for the first day of jury selection in a criminal prosecution of various felony charges. Id., 411. At the end of the first day of jury selection, the court ordered the parties to return to court the next day at 10:45 a.m. to resume the proceedings. Id. The defendant then went to work delivering newspapers from 1 to 8 a.m. Id., 415. When the defendant returned home after her shift, she sat on her couch and told her boyfriend to wake her if she inadvertently fell asleep. Id. The defendant, in fact, fell asleep, but she did not wake up until her attorney telephoned her from the courthouse. Id. The defendant immediately departed for court but arrived at approximately 11:30 a.m., forty-five minutes after the proceeding was scheduled to begin. Id., 415 n.6. Later that day,

the trial court refused to vacate the rearrest that had been ordered. Id., 412.

On the basis of these facts, a jury found that the defendant wilfully failed to appear for the second day of jury selection. Id. On appeal, however, this court concluded that "[w]orking late the night before a court appearance, pursuant to a regularly kept work schedule, failing to set an alarm clock or asking a friend to awaken her from a potentially inadvertent doze does not amount to purposefully and intentionally absenting oneself from the courthouse." Id., 418.

The present case differs substantially from *Khadijah*. In the present case, the defendant admitted that he could have walked to the courthouse and arrived in time for the commencement of jury selection. Additionally, the defendant's conduct after arriving at the courthouse, unlike the defendant's conduct in *Khadijah*, provided a basis for the jury to infer that the defendant never intended to appear in court on that day. Despite being given an opportunity by the court to commence jury selection even though he had arrived late, the defendant in the present case decided to flee the courthouse rather than attempt to persuade the court to vacate the order of rearrest. From this conduct, the jury was free to infer that the defendant had never intended to appear in court at the time and place to which the charges had been continued in order to commence jury selection. By contrast, the defendant in *Khadijah* appeared in a courtroom, albeit late, and took steps to persuade the court that jury selection should resume.

In sum, the jury in the present case reasonably could have inferred that the defendant's conduct throughout the day evinced an intent to avoid the commencement of his trial. The jury was free to discredit the defendant's version of events and his testimony that he fully intended to appear in court that day and only fled the courthouse after he had been told by his attorney that nothing could be done with respect to the court's decision to order a rearrest earlier that morning. See *State v. Whitford*, 260 Conn. 610, 627 n.9, 799 A.2d 1034 (2002) ("[i]t is axiomatic that the jury, in its role as fact finder, may choose to believe all, some or none of a witness' testimony"). Instead, the jury reasonably could have considered the defendant's conduct throughout the day of October 3, 2017, and in the weeks that followed, as evidence that the defendant never had intended to appear in court at 10 a.m. for the commencement of jury selection. We therefore conclude that there was sufficient evidence from which the jury reasonably could have found the defendant guilty beyond a reasonable doubt.

II

The defendant next claims that the trial court abused

its discretion by admitting evidence of the events that occurred after he entered the courthouse at 10:34 a.m. on October 3, 2017. Such evidence consisted of (1) testimony and video footage regarding the defendant's movements within and departure from the courthouse, (2) testimony regarding discussions he had with his attorney regarding the proceeding after he arrived at the courthouse, and (3) evidence that the defendant failed to surrender to law enforcement authorities in the weeks that followed his failure to appear.

The defendant's principal argument in this regard is that such evidence was irrelevant because, once the trial court had forfeited his bond and ordered him to be rearrested at 10:25 a.m., he no longer was under any obligation to appear. Thus, according to the defendant, his conduct after arriving at the courthouse, including his decision to depart the courthouse, was not probative of any material issue in the case. We disagree because, even if we accept for purposes of argument, the premise of his assertion that he no longer was under a legal obligation to appear in court after 10:25 a.m. when the court revoked his bond, his subsequent conduct was probative of whether he ever had intended, in the first instance, to appear in a courtroom at any time that day.[4]

At trial, the defendant filed a motion in limine to exclude evidence of the events that occurred after he entered the courthouse. Upon hearing oral argument on the motion, the court ruled as follows: "I understand why the defense would prefer this evidence not come in but based on the pieces of factual information available to me, it sounds like a classic consciousness of guilt testimony. And on that basis alone it's admissible whether it has some greater relevance beyond that we will see but certainly *at least* as a consciousness of guilt, it's admissible, so the motion [in limine] by the defendant is denied."[5] (Emphasis added.)

"We begin by setting forth the standard of review and legal principles applicable to this claim. To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . .

"It is axiomatic that [if premised on a correct view of the law, the] trial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence . . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Furthermore, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's

ruling, and we will upset that ruling only for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Ayala*, 333 Conn. 225, 243–44, 215 A.3d 116 (2019).

We conclude that the court did not abuse its discretion by ruling that evidence of the events that occurred after the defendant entered the courthouse was relevant and admissible. "Relevant evidence, that is, evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence . . . generally is admissible . . . unless its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time or needless presentation of cumulative evidence." (Internal quotation marks omitted.) *State* v. *Rosario*, 99 Conn. App. 92, 101, 912 A.2d 1064, cert. denied, 281 Conn. 925, 918 A.2d 276 (2007); see also Conn. Code Evid. § 4-1. Evidence that the defendant was told by Watson that his case had been continued in a reassigned courtroom and, upon hearing that information, he departed the courthouse, was probative of the defendant's state of mind regarding whether he wilfuly had chosen not to appear in court prior to the time that his bond was called. Indeed, the evidence reasonably could have supported an inference that the defendant's departure from the courthouse later in the morning and his failure to appear at the continued proceeding was part of his overall scheme that day to avoid the commencement of his trial. Thus, even if we accepted the premise of the defendant's argument that he was no longer under an obligation to appear in court after his bond had been forfeited, the evidence of his conduct after arriving at the courthouse was still independently relevant to the defendant's state of mind. Accordingly, we reject the defendant's evidentiary claim.[6]

### III

The defendant next claims that the court abused its discretion by admitting Watson's testimony because it failed to place the burden on the state to demonstrate a compelling need for the testimony and that there was, in fact, no compelling need shown by the state. We disagree with the defendant.

The following additional facts are relevant to our disposition of this claim. Watson did not represent the defendant at his trial on the charge of failure to appear. Prior to the start of trial, the defendant filed two motions in limine to prevent Watson from testifying. In the motions in limine, the defendant asserted that Watson's testimony was irrelevant and otherwise protected by the attorney-client privilege and work product doctrine. The motions in limine did not assert, however, that the state would be unable to demonstrate a compelling

need for Watson's testimony. The court deferred resolution of the motions until trial.

At trial, the state proffered Watson's testimony outside the presence of the jury. The defendant objected on the basis that another witness could testify as to the defendant's contact with Watson's law firm as well as the defendant's movements within the courthouse. During argument on the motions, the court indicated that it needed to apply the compelling need test set forth in "the *Ullmann* case . . . ." See *Ullmann* v. *State*, 230 Conn. 698, 716–21, 647 A.2d 324 (1994). Defense counsel asserted to the court that, in his view, the state had failed to meet its burden to demonstrate a compelling need for Watson's testimony.

In response, the state requested that the court defer its ruling on the defendant's objection until after the October 3, 2017 courtroom clerk had testified because the clerk's testimony would illustrate that Watson's testimony would concern facts to which only he was privy. The court granted the state's request.

After hearing testimony from the courtroom clerk, a marshal, and the deputy chief clerk of the criminal division at the courthouse, the court heard additional argument regarding the motions in limine, during which defense counsel again argued that the state had failed to meet its burden to establish a compelling need for the testimony. Defense counsel argued that a clerk or marshal could testify to the defendant's movements within the courthouse but did not identify anyone in particular who may have such knowledge. In response, the state argued that it knew of no one else who could testify as to the information that Watson had conveyed to the defendant in the courthouse.

The court ultimately denied in part the defendant's motions in limine. In doing so, the court explicitly referred to the compelling need test and determined that the state had met its burden in this case. It specifically reasoned that it had not heard any witness testify as to whether and how the defendant had been informed of his trial date, Watson's efforts to inform the defendant of the court date, Watson's course of action after the court ordered the defendant's rearrest, the defendant's contact with Watson and the extent of their discussions, and the defendant's movements within the courthouse. Thus, the court permitted the state to call Watson as a witness, but ordered that the state would not be allowed to elicit attorney-client privileged communications from him.

In *Ullmann* v. *State*, supra, 230 Conn. 716–21, our Supreme Court held that the state may call a defendant's prior defense counsel to testify as a witness in his criminal prosecution provided that the state demonstrates a "compelling need" for that testimony. In so holding, the court adopted the "compelling need" test applied

by federal courts in criminal cases in which a party seeks testimony from the prosecuting attorney. (Internal quotation marks omitted.) Id., 716, 718. In describing the parameters of the test, the court explained as follows: "When either party in a criminal case seeks testimony from the prosecuting attorney, the federal courts have applied a 'compelling need' test. . . . Under this test, the party wishing to call a prosecutor to testify must show that the testimony of the prosecutor is 'necessary and not merely relevant,' and that all other available sources of comparably probative evidence have been exhausted." (Citations omitted; footnote omitted.) Id., 716–17. According to our Supreme Court, the "same or analogous concerns" underlying the compelling need test with respect to prosecuting attorneys "exist if the prospective witness is or had been counsel for the defendant." Id., 717. The court believed "that the policy concerns underlying the compelling need test are valid and adopt[ed] that test as the criteria to be applied when either side in a criminal case seeks to call a prosecutor or defense attorney, who is or has been professionally involved in the case, to testify. The compelling need test strikes the appropriate balance between the need for the information and the potential adverse effects on the attorney-client relationship and the judicial process in general." (Footnote omitted.) Id., 717–18.

"[T]he trial court is charged with making the determination of the materiality of the witness' testimony and must, of course, honor the defendant's constitutional rights of confrontation and compulsory process. . . . [T]he vast weight of authority indicates that any decision whether or not to allow an attorney to be called is left to the discretion of the trial judge. Therefore, in reviewing [the] appellant's claims we will only reverse the decision of the trial court if there was an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Ullmann* v. *State*, supra, 230 Conn. 721.

We disagree with the defendant's contention that the trial court did not properly apply the compelling need test and, instead, placed the burden on him to demonstrate why there was not a compelling need for Watson's testimony. The court's comments in denying the motion make clear that it fully understood that it must apply the compelling need test as set forth in *Ullmann* and that it was satisfied that the state had met its burden in that regard. Moreover, even if the court's decision was ambiguous, it is well settled that, in the absence of a contrary indication, we must presume that the court applied the correct legal standard. See, e.g., *In re Jason R.*, 306 Conn. 438, 456, 51 A.3d 334 (2012).

We also disagree with the defendant's claim that the court abused its discretion by concluding that there was, in fact, a compelling need for Watson's testimony. Although it is possible that other witnesses might have

been available to testify as to the defendant's movements within the courthouse, Watson was uniquely positioned to testify about what he told the defendant and his impression of the defendant's understanding of the situation facing him on October 3, 2017. We, therefore, conclude that the court did not abuse its discretion by finding that Watson's testimony was necessary and that all other sources of comparably probative evidence had been exhausted. Moreover, for the reasons discussed in part II of this opinion, Watson's testimony was relevant to the defendant's state of mind on October 3, 2017. Accordingly, we conclude that the court did not abuse its discretion in permitting Watson to testify.

## IV

The defendant's final claim is that the court's jury instruction on the third element of failure to appear in the first degree was improper because, in essence, it informed the jury that the state must prove that he wilfully failed to appear "as required" rather than "when legally called according to the terms of [his] bail bond . . . ." General Statutes § 53a-172 (a). Specifically, the defendant argues that the court improperly instructed the jury in a manner that permitted it to find that the defendant was guilty of failure to appear on the basis of conduct that occurred after he was no longer under an obligation to appear in court because his appearance bond already had been forfeited by the court.[7]

In response, the state contends that the court properly instructed the jury because the instructions were based on a proper interpretation of the elements of the offense contained in § 53a-172. We agree with the state that the court's instructions were proper under the circumstances of this case.

The following facts and procedural history are relevant to this claim. The defendant submitted a written request to charge on the elements of failure to appear in the first degree. That request to charge stated in relevant part: "The defendant is charged in count one with failure to appear in the first degree. The statute defining this offense reads in pertinent part as follows: a person is guilty of failure to appear in the first degree when while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear. . . .

"The third element is that the defendant wilfully failed to appear when legally called according to the terms of his bail bond. as required[8] . . . .

"In summary, the state must prove beyond a reasonable doubt that (1) the defendant was released on bail on the condition that he appear personally in connection with his criminal proceeding at a later date, (2) he

was required to appear in court on October 3, 2017, and (3) he wilfully failed to appear on that date when legally called according to the terms of his bail bond." (Footnote added.) The defendant's request to charge did not seek an instruction to the jury that it was prohibited from finding the defendant guilty for failing to appear in court at a date and time after his bail bond had been forfeited.

During the afternoon of the first day of evidence, the court distributed its draft charge to the parties. With respect to the instructions on the elements of failure to appear, the court's proposed charge directly quoted the language of § 53a-172 (a) (1). The draft charge thereafter discussed each of the individual elements of the offense. With respect to the third element, the charge stated: "The third element is that the defendant wilfully failed to appear as required."

During the charge conference, defense counsel objected to the court's proposed instruction on the third element of failure to appear because the instruction did not specifically state that a person is guilty of failure to appear if he wilfully failed to appear *when legally called according to the terms of his bond*. Defense counsel argued that the court's proposed use of the phrase "as required" unduly broadened the scope of the statute because, in his view, the jury could only consider the defendant's failure to appear at the time that the clerk "recite[d] the bond, call[ed] for the defendant, and the defendant [did] not show himself before the court." In the defendant's view, once the bond had been forfeited at 10:25 a.m., he was no longer under any obligation to appear in a courtroom. The court's instruction, the defendant contended, permitted the jury to find him guilty on the basis of conduct that occurred at a time that he was no longer legally called according to the terms of his bail bond. The court subsequently overruled his objection and instructed the jury in accordance with the language used in the draft charge.[9]

Our standard of review pertaining to a claim of instructional error is well established. "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Browne*, 84 Conn. App. 351, 366, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

For the following reasons, we conclude that the court's instruction on the third element of failure to appear in the first degree was consistent with the plain meaning of the statute as well as case law interpreting the statute, and did not improperly permit the jury, under the circumstances of this case, to convict the defendant solely on the basis of conduct that occurred after he no longer was under a legal obligation to appear in court.

First, it is important to note that the court's instructions on the elements of the offense began by directly quoting the statutory language that the defendant contends was necessary to confine the offense to its proper limits. Thus, the jury necessarily understood that it could convict the defendant only if "he wilfully fail[ed] to appear when legally called according to the terms of [his] bail bond."

Second, we conclude that the court's use of the phrase "as required" in further explicating the third element of the offense was simply a shorthand reference back to the language of the statute: "when legally called according to the terms of [his] bail bond . . . ." The defendant's bail bond "required" him to appear in court at 9 a.m. on May 21, 2015, and "at any other place and time to which the charge(s) against me may be continued . . . ." The court's use of the phrase "as required," in our view, and when read in context, sufficiently tied the defendant's obligation to appear at the time and place he was "legally called according to the terms of [his] bail bond . . . ."

Third, the court's instructions were also consistent with this court's statement that, to secure a conviction for failure to appear, "the state must prove beyond a reasonable doubt that the defendant was legally ordered to appear under the terms of his bail bond, that he failed to appear and that such failure was wilful." (Internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556, 568, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007).[10]

Fourth, we reject the defendant's assertion that the court's instructions improperly permitted the jury to convict the defendant for conduct in which he may have engaged after the court forfeited his bond at 10:25 a.m. The court's instructions adequately informed the jury that it could find the defendant guilty if they concluded that the defendant failed to appear in court, as required by the terms of his bail bond, with respect to a felony charge at 10 a.m. on October 3, 2017, and that his failure to appear at that time and place was wilful.

Even if we were to agree that the court's instructions permitted the jury to find the defendant guilty on the basis of conduct that occurred after the court forfeited his bond at 10:25 a.m., we disagree with the defendant that a verdict of guilty on that basis would be inconsis-

tent with § 53a-172 (a) (1). When the court ordered the defendant's bond forfeited, it also indicated that it was willing to proceed with jury selection if Watson was able to get his client to the courthouse. Watson explained this fact to the defendant and told him to appear in the courtroom that the court was opening for that purpose. The practical effect of the court's statement was to stay or condition the forfeiture of the defendant's bond until later in the day in order to give the defendant the benefit of an opportunity to cure his failure to appear. Although the court could have been clearer regarding its intent to condition its order forfeiting the defendant's bond and ordering him rearrested, we conclude that no particular formalities such as vacating or formally staying the forfeiture were necessary in order to, in effect, grant the defendant additional time to appear in court without simultaneously terminating his legal obligation to do so. Accordingly, in our view, the defendant's bond continued to obligate him to appear in a courtroom after he had arrived at the courthouse.[11] Under these circumstances, we are unpersuaded that the court's instructions permitted the jury to find the defendant guilty for conduct occurring at a time when he was no longer required to appear according to the terms of his bail bond.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the jury was not informed about the specific charges pending against the defendant at the time of his failure to appear, the record indicates that the defendant had been charged with possession of narcotics, an unclassified felony; two misdemeanor drug offenses; and two motor vehicle violations.

[2] The trial court characterized the defendant's conduct as evincing a consciousness of guilt, and the jury was free to consider it on that basis. In our view, however, this evidence is better described as circumstantial evidence of the defendant's state of mind regarding whether he wilfully chose not to appear.

[3] In *Gibson*, this court concluded that the evidence presented at trial was sufficient to support the defendant's conviction for failure to appear in the first degree but awarded him a new trial because of prosecutorial impropriety during closing argument. *State* v. *Gibson*, supra, 114 Conn. App. 303–304, 319. Following certification to appeal, our Supreme Court reversed this court's decision after concluding that the prosecutor's remarks during closing argument were not improper. *State* v. *Gibson*, supra, 302 Conn. 663.

[4] We ultimately also reject the premise for the defendant's argument for the reasons stated in part IV of this opinion.

[5] The defendant did not ask the court to give a limiting instruction to the jury regarding the appropriate use of this testimony.

[6] The defendant baldly states in his brief that the court's admission of this evidence violated his "constitutional rights to due process and fair trial." In our view, this is an evidentiary claim masquerading as a constitutional claim. See, e.g., *State* v. *Walker*, 215 Conn. 1, 5, 574 A.2d 188 (1990) ("the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved" [internal quotation marks omitted]).

[7] The defendant argues that the court's instruction misled the jury, as evidenced by the jury's note requesting clarification as to whether "the wilful failure to appear charge appl[ied] to [the defendant's] failure to appear at 10 a.m.? Or failure to appear in the court before a judge that day?" (Internal quotation marks omitted.) Before the court was able to respond to the substance of this note, however, the court was required to replace a member of the jury, who had telephoned the court to report that she had

a sick child at home and could not continue her service. The court replaced that juror with an alternate member of the jury and instructed the newly constituted jury that it must start its deliberations from the beginning. The court also informed the jury that it was not going to respond to the jury note because it came from the "prior jury." The newly constituted jury did not send out a similar note before reaching its verdict. We see no error in the manner in which the court proceeded.

[8] This sentence fragment appears in the original. It is unclear whether the defendant intended to delete the phrase "as required" from the proposed request to charge or whether the period following the word "bond" is a scrivener's error.

[9] With respect to the charge of failure to appear in the first degree, the court instructed the jury as follows: "The defendant is charged with failure to appear in the first degree. The statute defining this offense reads in pertinent part as follows: a person is guilty of failure to appear in the first degree when while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: Element 1—released on bail or promise to appear.

"The first element is that the defendant was released on bail upon the condition that he appear personally in connection with his criminal proceeding at a later date. The [statute] requires that the crime with which the defendant was charged when he was released must be a felony. Element 2—Duty to appear. The second element is that on October 3, 2017, the defendant was required to appear before a court in connection with a felony charge.

"Element 3—Failure to appear. The third element is that the defendant wilfully failed to appear as required. An act is done wilfully if done knowingly, intentionally, and deliberately. In order to prove this element, the state must prove beyond a reasonable doubt either that the defendant received and knowingly, intentionally, and deliberately ignored a notice to appear or that the defendant knowingly, intentionally, and deliberately embarked on a course of conduct designed to prevent him from receiving such notice. Please recall and apply my earlier instruction on knowledge.

"Conclusion: In summary, the state must prove beyond a reasonable doubt that (1) the defendant was released on bail on the condition that he appear personally in connection with his criminal proceeding at a later date, (2) he was required to appear in court on October 3, 2017, and (3) he wilfully failed to appear on that date."

[10] The instruction at issue was nearly identical to the model jury instruction provided on the Judicial Branch website. See Connecticut Criminal Jury Instructions 4.4-1 (December 1, 2007), available at https://jud.ct.gov/JI/Criminal/Criminal.pdf (last visited March 25, 2020). Although the model jury instructions are "not dispositive of the adequacy of the [jury] instruction, an instruction's uniformity with the model instructions is a relevant and persuasive factor in our analysis . . . ." (Internal quotation marks omitted.) *State* v. *Gomes*, 193 Conn. App. 79, 88, 218 A.3d 1063, cert. granted on other grounds, 334 Conn. 902, 219 A.3d 798 (2019).

[11] The defendant failed to do so twice—once at 10 a.m. and again later in the morning on the third floor.